## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:20-CV-00199-JHM**

**LOGAN L. COUCH**                                                        **PLAINTIFF**

**v.**

**BRANDON BROOKS,** *et al.*                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment by Defendants Brandon Brooks ("Brooks"), Bobby Oldham ("Oldham"), and Deputy Dotson ("Dotson") (cumulatively "Defendants"). [DN 47]. Plaintiff Logan L. Couch ("Couch"), *pro se*, filed a response [DN 48], and the Defendants filed a reply [DN 51]. Fully briefed, this matter is ripe for decision. The Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion for Summary Judgment.

### I. BACKGROUND

Couch is a pretrial detainee at the Grayson County Detention Center ("GCDC"). In an attachment to his verified Complaint [DN 1-1], he makes the following allegations:

> At appx 1:20 pm on 11/9/2020, . . . Brooks (J-94) approached the door of Grey Cell 298 in the [GCDC] . . . and instructed all offenders, while pointing his jail issued taser gun, to sit down. Officer Brooks then entered Grey Cell 298 and began aggressively yanking, with excessive force, on the television cords causing the cords to break from thier [sic] connections. Officer Brooks then grabbed a hotpot (a electrical device with a cylander [sic] pitcher attached used for boiling water) and threw it, in anger, hitting a inmate by the name of Marvin C. Norris. The hotpot was full of boiling water and the contents of the pitch all landed on [me and Norris] and [my] legal documents used for fighting [my] ongoing Federal case. Due to COVID-19, [I am] currently unable to re-obtain these documents thus cannot properly defend his self on the matter. . . . Both inmates . . . suffered 3rd degree burns on the right arm. Officer Brooks then continued to scream insults and point his taser gun at inmates. While Officer Brooks continued his angry tyraid [sic] other Officers remained at the door of Grey Cell 298. It was later discovered that names of these other Officers were Bobby Oldham (J-54), Deputy Dotson (J-96), and Deputy Captain John Doe, who refused to give his name or badge number.

[Norris] was then taken to be seen by medical.  [I] was initially ignored of [my] injuries, after informing and trying several times to show the Officers [my] burn injuries . . . . At apprx 2:40 pm Officer Bobby Oldham (J-54) escorted [me] to medical care where [I] was seen by Nurse Desiree Walton (J-15) regarding the medical request form. [Walton] (J-15) applied burn ointment and applied a bandage to the burn.  [I] was then escorted back to Grey Cell 298 by Bobby Oldham (J-54).

[*Id.* at 9–10].  Based upon these allegations, Couch claimed that every Defendant violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments.  [DN 1-1 at ¶¶ 1–14].  He also asserted state law claims against Brooks.  [*Id.* at ¶ 1].

Pursuant to the Court's 28 U.S.C. § 1915A(b)(1) review, the Court dismissed his First, Fifth, and Eighth Amendment claims, his Fourteenth Amendment claims for deliberate indifference to a serious medical need, and his claims for "aiding and abetting" against all Defendants. [DN 8 at 4–9].  Additionally, both Couch and the Court dismissed several GCDC officials as defendants in this suit.  [*Id.* at 9]; [DN 15].  The Court allowed the following claims to proceed in this action: a Fourteenth Amendment excessive-force claim against Brooks in his individual capacity; Fourteenth Amendment claims for failure to intervene in the excessive-force incident against Oldham and Dotson in their individual capacities; and state-law claims of assault and negligence against Brooks.  [DN 8].  The Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.  [DN 47].

## II.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit

statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III. DISCUSSION

In his Complaint, Couch raises both federal and state law claims. For his federal claims, Couch raises two constitutional claims under 42 U.S.C. § 1983. First, he alleges Brooks applied excessive force in violation of the Fourteenth Amendment. [DN 1 at ¶ 1]. Second, he alleges Oldham and Dotson also violated the Fourteenth Amendment by failing to intervene in that excessive force incident. [DN 1 at ¶¶ 11–13]. For his state law claims, he alleges Brooks committed assault and negligence against him. [DN 1 at ¶ 1]. In response, the Defendants claim they are entitled to qualified immunity—both under federal and state law. [DN 47-1 at 11–14]. The Court addresses each of these arguments in turn.

### A. Federal Claims

The Defendants assert qualified immunity in response to Couch's § 1983 claims. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (internal quotation marks omitted). "Although a defendant ordinarily bears the burden of proof for an affirmative defense, a plaintiff bears the burden of overcoming qualified immunity." *Crawford v. Tilley*, No. 20-6391, 2021 WL 4699442, at *5 (6th Cir. Oct. 8, 2021). "In cases with multiple defendants, we assess qualified immunity 'in the context of each individual's specific conduct.'" *Ricks v. Pauch*, No. 20-1778, 2021 WL 4775145, at *3 (6th Cir. Oct. 13, 2021) (quoting *Hopper v. Plummer*, 887 F.3d 744, 756 (6th Cir. 2018)).

#### 1. Violation of a Constitutional Right

4

Couch alleges two constitutional violations under the Fourteenth Amendment.  First, he contends Brooks violated the Constitution by applying excessive force to a pretrial detainee. Second, he contends Dotson and Oldham failed to intervene in that alleged exercise of excessive force.  The Court addresses each in turn.

### a.   Defendant Brooks's Excessive Force

First, Couch alleges Brooks exercised excessive force by throwing a hotpot near him, burning him with hot water. Since Couch is a pretrial detainee, "the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a government official's excessive use of force." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  The Supreme Court clarified the Fourteenth Amendment standard for excessive force claims in *Kingsley v. Hendrickson*.  576 U.S. 389 (2015).  *Kingsley* established "a two-prong inquiry for Fourteenth Amendment excessive-force claims."  *Hale v. Boyle Cnty.*, No. 20-6195, 2021 WL 5370783, at *4 (6th Cir. 2021).  First, "an official must purposefully, knowingly, or ('possibly') recklessly engaged in the alleged physical contact with the detained person. Mere negligent or accident will not suffice."  *Id.* (citing *Kingsley*, 576 U.S. 396–97 (internal citations omitted)).  Second, "the official's use of force must be objectively unreasonable."  *Id.*[1]

Turning to the first *Kingsley* prong, the issue is whether Brooks "purposefully, knowingly, or ('possibly') recklessly engage[d] in the alleged physical contact with" Couch.  *Hale*, 2021 WL 5370783, at *4.  According to Couch's own Complaint, "Brooks grabbed a hotpot . . . and threw it . . . ."  [DN 1-1 at 9].  The hotpot hit Marvin Norris ("Norris"), another inmate.  [*Id.*].  This

---

[1] The Defendants claim Couch must prove that Brooks "acted maliciously and sadistically for the very purpose of causing harm."  [DN 47-1 at 9] (internal quotation marks omitted).  This standard is incorrect.  "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"  *Kingsley*, 576 U.S. at 400 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977)).  The Defendants also approach Couch's excessive force claim through the lens of the constitutional "shock the conscience" test.  *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).  As another federal court elucidated, "*Kingsley* is best read as elaborating on this standard, not abandoning it."  *Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018).

sequence does not suggest Brooks "purposefully" or "knowingly" applied force against Couch. However, the Sixth Circuit and the Supreme Court say the defendant may "possibly" be liable under an excessive force claim for "reckless" actions. *Kingsley*, 576 U.S. 396–97; *Hale*, 2021 WL 5370783, at *4. Per the Supreme Court, "[a] person acts recklessly, in the most common formulation, when he consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards." *Borden v. United States*, 141 S.Ct. 1817, 1824 (2021) (internal quotations omitted); *Brawner v. Scott Cnty.*, 14 F.4th 585, 594 (6th Cir. 2021) (defining "recklessness"). If Brooks did grab the hotpot and hurl it towards Norris, he would have "consciously disregarded" the possibility that the water could scald Norris and the other inmates in the cell, including Couch. If Couch's recitation of the facts is true, a reasonable factfinder could conclude Brooks acted recklessly.

For the second *Kingsley* prong, the Court must determine whether a reasonable factfinder could conclude the force Brooks used was "objectively unreasonable." 576 U.S. at 396–97. *Kingsley* provided numerous factors to guide this analysis, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. at 397. "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Courts "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

Several *Kingsley* factors consider the justification for the use of force. They examine: "the need for the use of force and the amount of force used"; "the severity of the security problem at issue"; "the threat reasonably perceived by the officer"; and "whether the plaintiff was actively resisting." 576 U.S. at 397. The Defendants state that "Brooks was making rounds collecting razors from inmates" when the "inmates refused to follow orders" [DN 47-1 at 4]; some "were yelling and making threats." [*Id.*]. Oldham's affidavit supports this description, noting how he heard inmates resisting Brooks's orders. [DN 47-5 at 1]. Couch disagrees, calling these claims "a lie." [DN 48 at 2]. He agrees Brooks came to collect razors, but he disagrees that the inmates refused orders, suggesting only that it took one inmate some time to locate his razor. [DN 35 at 1]. But, while Defendants note how some "inmates refused to follow orders," [DN 47-1 at 4], they do not allege that Couch himself "actively resist[ed]." *Kingsley*, 576 U.S. at 397. Nor are there any allegations that Couch—or even Norris for that matter—posed a "security problem" or "threat" to the officers. *Id*. Couch claims he "was seated the entire time and never spoke a word[,]" and, notably, the Defendants do not dispute this fact. [DN 48 at 2]. Thus, if Brooks did use force, there seems to be little justification for it.

Similarly, the parties disagree on "the amount of force [Brooks] used" against Couch—if any. *Kingsley*, 576 U.S. at 397. According to the Defendants, Brooks merely knocked the hotpot off its stand when trying to disconnect television cords; instead, they claim that Norris threw the pot, which then burned Couch. [*Id.* at 4–5]. Only two GCDC officers witnessed the incident: Brooks and Oldham. In his incident report, Oldham recounts how he entered Couch's cell with Brooks to help control the inmates when he saw Norris throw the hotpot. [DN 47-4 at 1]. Per this recitation, the "need for the use of force" would be high but "the amount of force used" would be low, suggesting no excessive force. *Kingsley*, 576 U.S. at 397. Again, Couch disagrees. He

7

contends Brooks threw the pot, causing boiling hot water to splash upon him and his legal documents. [DN 1-1 at 9]. These facts could support a finding of excessive force, especially if the factfinder found there was no need for that force, as discussed above.

Next, *Kingsley* considers "any effort made by the officer to temper or to limit the amount of force[.]" 576 U.S. at 397. According to Couch, Brooks "grabbed a hotpot . . . and threw it, in anger, hitting a [sic] inmate" and spilling the contents all over Couch. [DN 36 at 22]. Based on this account, Brooks made no effort to curb his use of force. Nor could he have—once the pot was thrown, it could not be stopped. But, as previously mentioned, Brooks argues that he did not throw the hotpot but only accidentally knocked it off the stand, allowing Norris to throw it against the wall. [DN 47-1 at 4]. If this were true, Brooks could not "temper or to limit the amount force." *Kingsley*, 576 U.S. at 397. Again, this factor depends on the parties conflicting recitations of the facts.

Another *Kingsley* factor examines the "extent of the plaintiff's injury." 576 U.S. at 397. Defendants dedicate a section of their motion for summary judgment to argue that Couch "failed to establish that he suffered a physical injury." [DN 47-1 at 14]. However, "the inquiry focuses . . . on the force itself rather the injury." *Coley v. Lucas Cnty.*, 799 F.3d 530, 539 (6th Cir. 2015). Noting the similarities between excessive force analysis under the Fourth and Fourteenth Amendments, *Coley* found "the extent of the injury inflicted is not crucial to an analysis of a claim for excessive force . . . ." *Id.* Thus, "[a] detainee's injury is only one of several factors to be considered in determining whether the application of force was punitive . . . ." *Robinson v. Danberg*, 673 F. App'x. 205, 209–219 (3d Cir. 2016). The GCDC physician reported Couch "was burned by water from hotpot [and] has quarter sized area to r[ight] arm near elbow." [DN 48-1 at 1]; [DN 48 at 4]. This required treatment for two weeks and left a permanent scar. [DN 48 at 10].

8

Previous cases have deemed such burns as nonserious injuries.  *See, e.g., Brock v. Wright*, No. 4:15-CV-00065, 2018 WL 1189406, at *2 (W.D. Ky. Mar. 7, 2018); *Ratliff v. De Baun,* No. 5:15-CV-155, 2017 WL 4365802, at *8 (W.D. Ky. Sept. 29, 2017).

In summary, the parties present conflicting factual allegations for the same incident. According to the Defendants, Brooks found himself in a highly confrontational situation and any exercise of force on his part was merely an accident—it was another inmate who caused Couch's injuries, not him.  According to Couch, Brooks angrily and arbitrarily applied this force.  Despite Couch's limited injuries, a reasonable factfinder could find the force excessive in context. And although Couch's evidence comes solely from his Complaint, "[t]he allegations in a verified complaint may serve as an affidavit for purpose of responding to a motion for summary judgment." *Wilson v. Corizon Health, Inc.*, No. 20-1354, 2021 WL 4955260, at *3 (6th Cir. Jul. 26, 2021).  In short, a genuine issue of material fact exists on whether a constitutional violation occurred. Therefore, the Court must deny the Defendants' Motion for Summary Judgment if the right to be free from excessive force was clearly established at the time of the incident.

### b.   Defendants Dotson and Oldham's Failure to Intervene

Next, Couch alleges Oldham and Dotson failed to intervene during Brook's unconstitutional application of excessive force.  The Sixth Circuit has found "officers can be held liable to protect a person from the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  An officer may be liable "(1) when the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  *Id.*   Under Couch's factual allegations, neither element is satisfied.

To start, while Oldham admits he witnessed the event, Dotson does not. [47-5]; [DN 47-1 at 11]. If true, Dotson cannot be liable for failing to intervene since he was not present. Nevertheless, Couch has failed to show that Oldham and Dotson had any reason to expect "force would be . . . used." *Turner*, 119 F.3d at 429. Moreover, they had no opportunity to prevent that force. "[C]ourts have been unwilling to impose a duty to intervene where . . . an entire incident unfolds in a matter of seconds." *Ontha v. Rutherford Cnty.*, 222 F. App'x. 498, 506 (6th Cir. 2007) (internal quotation marks omitted); *see also Bard v. Brown Cnty.*, 970 F.3d 738, 753 (6th Cir. 2020). Brooks's alleged action lasted mere seconds. Therefore, even if Oldham and Dotson were present, they could not have intervened. [DN 1-1 at 9]. Because no constitutional violation occurred, Oldham and Dotson are entitled to qualified immunity. The Court **GRANTS** the Defendants' Motion for Summary Judgment on Couch's failure to intervene claims.

### 2. Clearly Established Law

If a court finds an officer's conduct violated a constitutional right, that right must also be "clearly established at the time" of the incident. *Wesby*, 138 S.Ct. at 589. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. at 202. "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2015). "When determining whether a right is clearly established, courts are instructed to consider the 'specific context of the case' and to avoid construing rights too generally." *Clark v. Stone*, 475 F. Supp. 3d 656, 665 (W.D. Ky. 2020) (quoting *Saucier*, 533 U.S. at 201). But, "general statements of the law are not inherently incapable of giving fair clear warning to officers, but in the light of pre-existing law the unlawfulness must

10

be apparent." *White v. Pauly*, 137 S.Ct. 548, 552 (2018) (international citations and quotation marks omitted). Here, Defendants make no argument that the right of a pretrial detainee to be free from excessive force is not clearly established. *See* [DN 47-1 at 11–13].

This incident occurred on November 9, 2020. [DN 48 at 1]. At that time, pretrial detainees had a clearly established right to be free from excessive force. *Graham v. Connor* has long held that the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." 490 U.S. 386, 395 n. 10 (1989). More recently, *Kingsley* reaffirmed and clarified that right. 576 U.S. 389. In fact, the Sixth Circuit has already "held that the right to be free from excessive force . . . is a clearly established right for purposes of the qualified immunity analysis." *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001); *Wiley-Stiger v. O'Bannon*, No. 3:14-CV-295, 2016 WL 7422682, at *8 (W.D. Ky. Dec. 22, 2016). Similarly, the Sixth Circuit has held "[i]t is a constitutional violation for law enforcement officials to use violent physical force 'totally without penological justification.'" *Coley*, 799 F.3d at 540 (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)).

Couch has met both elements of the qualified immunity analysis. Brooks's actions could constitute a violation of a clearly established constitutional right. The Court **DENIES** the Defendants' Motion for Summary Judgment [DN 47] on Couch's Fourteenth Amendment excessive force claim against Brooks.

### B. Couch's State-Law Claims

Couch also raises state-law claims of assault and negligence against Brooks. [DN 1 at ¶ 1]; [DN 8 at 9]. In turn, Brooks argues he is entitled to qualified official immunity under Kentucky state law. [DN 47-1 at 13–14]. This immunity is afforded to public officers when their actions are "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment,

11

or personal deliberation, decision, and judgment;" "(2) in good faith;" and "(3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 521–22 (Ky. 2001).

Under Kentucky law, a discretionary act "require[s] the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). The act "may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed." *Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 430 (Ky. Ct. App. 1959). Applied in the present case, Brooks's interaction with the inmates and his attempt to recover the razor blades involved a discretionary act. While his job certainly required him to ensure facility and inmate safety, he "had to make a judgment call on how to get the razors back" and "on the safest method to accomplish this objective." [DN 47-1 at 13]. This satisfies the first element of immunity on Couch's state law claims.

However, there is a question whether Brooks acted "in good faith." The Kentucky Supreme Court has found "the 'good faith' qualification has both an objective and a subjective component." *Bryant v. Pulaski Cnty. Detention Center*, 330 S.W.3d 461, 466 (Ky. 2011). "Objectively, a court must ask whether the behavior demonstrates 'a presumptive knowledge of and respect for basic, unquestioned constitutional rights.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 523). "Subjectively, the court's inquiry is whether the official has behaved with 'permissible intentions.'" *Id.* In a similar case, the Kentucky Supreme Court found an officer unentitled to immunity when he tossed gasoline on a fire, burning a nearby inmate. *Bryant*, 330 S.W.3d at 463–64. *Bryant* held:

> Every person enjoys the established right to be free from assaults, which is supported by the criminalization of certain assaults or the liability that comes from civil assault. [The officer] would certainly be presumed to know—that is know or reasonably should have known—that throwing gas on an open fire when the

12

> [inmate] was standing nearby could reasonably cause [the inmate] harm, thus
> making [the officer's] action objectively unreasonable, or in bad faith . . . . The
> dangerousness of the action, whether [the officer] actually intended to harm [the
> inmate] or not, demonstrates the willfulness of the act—throwing the gas on the fire
> even though any reasonable person would have realized the danger to [the
> inmate]—and demonstrates bad motive, or bad faith.

*Id.* at 466–67.  Here, Brooks allegedly threw a hotpot full of water near Couch; like *Bryant*, any reasonable person would have recognized the potential danger in this action.  A reasonable factfinder could determine that Brooks acted without "a presumptive knowledge of and respect for basic, unquestioned constitutional rights."  *Id.* at 466.  Therefore, he is not entitled to immunity under Kentucky state law.  The Court **DENIES** the Defendants' Motion for Summary Judgment on these state claims.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment [DN 47] is **GRANTED** on Couch's Fourteenth Amendment failure to intervene claims against Oldham and Dotson.  The Motion for Summary Judgment is **DENIED** on Couch's Fourteenth Amendment excessive force claim and state law claims against Brooks.

Joseph H. McKinley Jr., Senior Judge
United States District Court

December 6, 2021

cc: Logan L. Couch, *pro se*
     counsel of record

13